Justewicz v. Sealy Corp., 2012 NCBC 57.

STATE OF NORTH CAROLINA

COUNTY OF RANDOLPH

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
12 CVS 2417

ROBERT A. JUSTEWICZ,
Individually and On Behalf of All
Others Similarly Situated,

        Plaintiff,

    v.

SEALY CORPORATION,
LAWRENCE J. ROGERS, PAUL
NORRIS, JAMES W. JOHNSTON,
SIMON E. BROWN, GARY E.
MORIN, DEA B. NELSON,
RICHARD ROEDEL, DEBORAH G.
ELLINGER, JOHN B. REPLOGLE,
SILVER LIGHTNING MERGER
COMPANY, and TEMPER-PEDIC
INTERNATIONAL INC.,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

ORDER GRANTING
MOTION TO STAY

{1}     THIS MATTER is before the court on Defendants' Motion to Stay ("Motion") pursuant to N.C. Gen. Stat. § 1-75.12 in favor of similar actions pending in the Delaware Court of Chancery. For the reasons below, the Motion is GRANTED.

    *Essex Richards, P.A. by Norris A. Adams, II and Marc E. Gustafson for Plaintiff Robert A. Justewicz.*

    *Womble Carlyle Sandridge & Rice, LLP by Pressly M. Millen and Hayden J. Silver, III for Defendants.*

Gale, Judge.

# I. PARTIES

{2} Plaintiff Robert A. Justewicz ("Justewicz") is a resident of Troy, Michigan. At all relevant times, Justewicz has held 7,000 shares of Sealy Corporation common stock.

{3} Defendant Sealy Corporation ("Sealy") is incorporated in Delaware with its headquarters in Trinity, North Carolina.

{4} Defendant Tempur-Pedic International Inc. ("Tempur-Pedic") is incorporated in Delaware with its headquarters in Lexington, Kentucky.

{5} Defendant Silver Lightning Merger Corporation ("Merger Sub") is a wholly-owned subsidiary of Tempur-Pedic which was created for the purpose of executing Tempur-Pedic's purchase of Sealy.

{6} Defendant Lawrence J. Rogers was, at all relevant times, the President and Chief Executive Officer of Sealy. Defendant Paul Norris was, at all relevant times, a non-executive Chairman at Sealy. Defendants James W. Johnston, Simon E. Brown, Gary E. Morin, Dean B. Nelson, Richard Roedel, Deborah G. Ellinger, and John B. Replogle were, at all relevant times, members of Sealy's Board of Directors. These Defendants, along with Defendants Lawrence J. Rogers and Paul Norris are collectively referred to as the "Individual Defendants."

# II. INTRODUCTION

{7} Justewicz brought this purported class action on behalf of all holders of Sealy common stock. The action challenges the proposed sale of Sealy to Tempur-Pedic, which is to be accomplished via a merger between Sealy and the Merger Sub, after which Sealy will survive as a wholly-owned subsidiary of Tempur-Pedic ("Merger" or "Proposed Transaction"). (Am. Class Action Compl. 1–2.)

{8} Plaintiff seeks to enjoin the Proposed Transaction, alleging that it is the result of a fundamentally flawed process and approved by the Individual Defendants in breach of their fiduciary duties. (Id. at 17, 22–23.)

{9} Defendants seek to stay the action pending before this court in favor of a consolidated case arising out of five lawsuits currently pending in the Delaware Court of Chancery which also challenge the Proposed Transaction.

## III. PROCEDURAL HISTORY

{10} Plaintiff filed his Class Action Complaint on October 2, 2012, and his Amended Class Action Complaint on November 7, 2012. The case was designated as a mandatory complex business case by Order of Chief Justice Sarah Parker and assigned to the undersigned on October 10, 2012.

{11} The Amended Complaint asserts claims for Breach of Fiduciary Duty against the Individual Defendants and Aiding and Abetting Breach of Fiduciary Duty against Sealy and Tempur-Pedic, and seeks only injunctive relief. (Am. Class Action Compl. 22–25.) Plaintiff challenges the Proposed Transaction as undervaluing Sealy and as being overly preferential to Tempur-Pedic and Sealy's board members, to the detriment of the holders of Sealy common stock. (Id. at 3.)

{12} On October 12, 2012, Plaintiff filed a Motion for Expedited Discovery and for a Hearing and Briefing Schedule on Plaintiff's Motion for a Preliminary Injunction. Plaintiff has not yet filed the preliminary injunction motion, but anticipates doing so.

{13} On October 24, 2012, Defendants filed this Motion to Stay. The court held a hearing on the Motion on November 8, 2012, after which the court accepted additional letter submissions.

{14} The Motion is ripe for adjudication.

## IV. FACTS

### A. The Proposed Transaction

{15} On September 27, 2012, Tempur-Pedic announced its purchase of Sealy for $2.20 per share, which, according to Defendants, represents "a premium of approximately 23% to Sealy's 30-day average closing price on Wednesday, September 26, 2012," (Defs.' Mot. to Stay Ex. A at 1.), but which, according to

Plaintiff, represents only a 3% premium over the closing price of Sealy's stock on September 27, 2012. (Am. Class Action Compl. 2.) Since the date of the press release, Sealy's stock has traded as high as $2.74 per share. (Am. Class Action Compl. 4.)

{16}  Sealy and the Merger Sub entered into a Merger Agreement, which, by its terms, is governed by Delaware law. (Id. at 2.); (Defs.' Mot. to Stay Ex. G at 71.) Plaintiff complains that the Merger Agreement includes several "deal-protection devices" which "thwart the ability of other suitors to maximize shareholder value through topping bids." (Am. Class Action Compl. 16.)

{17}  The Proposed Transaction has already been approved by shareholders holding more than 50% of Sealy's stock. (Id. at 2.)

{18}  On October 30, 2012, Sealy filed an Information Statement with the Securities and Exchange Commission ("SEC"). (Id. at 17.) At oral argument, Defendants indicated the SEC has signified that it will review the Information Statement.

### B.      The Consolidated Delaware Lawsuits

{19}  To date, five other cases have been filed on behalf of Sealy shareholders challenging the Proposed Transaction in Delaware Chancery Court.[1] One of those cases, captioned *Clarke v. Rogers et al.*, was filed on October 2, the day prior to the filing of the lawsuit presently before this court. The remaining four were filed shortly thereafter: two on October 15, one on October 16, and one on October 17, 2012. (Defs.' Mot. to Stay 3–4.)

{20}  The Delaware Court of Chancery consolidated the five cases on November 13, 2012 (hereinafter referred to as the "Delaware Case"). (Defs.' Post-Hearing Mem. of Law in Further Supp. of Their Mot. to Stay Ex. A.) A consolidated amended complaint, a motion for expedited procedure, and a motion for preliminary injunction have since been filed in the Delaware Case. (Id. at 5.)

---

[1] The other five cases are: *Clarke v. Rogers, et al.*, No. 7922 (Del. Ch.); *Singh v. Rogers, et al.*, No. 7945 (Del. Ch.); *Plourde v. Sealy Corp., et al.*, No. 7949 (Del. Ch.); *Gamble v. Rogers, et al.*, No. 7955 (Del. Ch.); *Nall v. Rogers, et al.*, No. 7957 (Del. Ch.).

{21}    The consolidated complaint in the Delaware Case challenges the Proposed Transaction as being unfair to the Sealy shareholders, alleging that the price agreed upon is inadequate and that the Proposed Transaction is the "product of a flawed process."  Verified Consolidated Am. Class Action Compl. at 1, *In re Sealy Corp. S'holders Litig.*, No. 7922-VCP (Del. Ch. filed Nov. 19, 2012).  The plaintiffs in the Delaware Case also "seek to enjoin the Proposed Transaction."  *Id.* at 3.  Unlike the lawsuit pending before this court, the plaintiffs in the Delaware Case also seek monetary damages.  (Pl.'s Mem. of Law in Opp'n to Defs.' Mot. to Stay 4.); Verified Consolidated Amended Class Action Complaint at 62, *In re Sealy Corp. S'holders Litig.*, No. 7922-VCP.

## V.    ANALYSIS

### A.    Legal Standard

{22}    This Motion is governed by N.C. Gen. Stat. § 1-75.12, which provides that upon motion, a judge may "enter an order to stay further proceedings in the action in this State" if the judge finds "that it would work substantial injustice for the action to be tried in a court of this State."

{23}    The entry of an order staying an action is a matter within the sound discretion of the trial judge.  *Motor Inn Mgmt., Inc. v. Irvin-Fuller Dev. Co.*, 46 N.C. App. 707, 710, 266 S.E.2d 368, 370 (1980) (citing *Allen v. Trust Co.*, 35 N.C. App. 267, 241 S.E.2d 123 (1978)).  Several factors may be considered when exercising this discretion.  *See Lawyers Mut. Liab. Ins. Co. of N.C.*, 435 S.E.2d at 573–74, 112 N.C. App. at 356–57 (1993).  The court need not consider each and every factor, nor must it find that every factor weighs in favor of granting the stay.  *Id.*

{24}    Chief Business Court Judge Tennille adopted the factors discussed in *Lawyers Mutual*, and elaborated on how they may be specifically adapted for use in a case involving a merger or other corporate transaction which implicates the internal affairs doctrine.  *Levy Invs. v. James River Grp., Inc.*, No. 07-CVS-000820,

2007 NCBC LEXIS 37 (N.C. Sup. Ct. Sept. 19, 2007). Judge Tennille specified the following factors:

1. Whether the issues are well settled in the state of incorporation. Do the issues raised involve unaddressed issues of corporate governance which the state of incorporation has a particularly strong interest in addressing . . .
2. The convenience of the parties and key witnesses . . .
3. The necessity of applying the forum state's laws . . .
4. The nexus of the competing jurisdictions to the parties and the controversy.
5. The potential for conflicting decisions. Careful consideration should be given to the ultimate authority that will determine the validity of the merger.
6. The progress of the litigation in both forums. How important is speed to resolution and which forum can proceed most expeditiously? . . .
7. The burden and expense to the parties and the courts of pursuing duplicate discovery . . .
8. The impact of multiple proceedings . . .
9. The significance, if any, of the first to file . . .
10. The demonstrated hardship, if any, on the plaintiff to intervene or proceed in the other forum. Will the plaintiff have access to the other forum?
11. The abilities of competing counsel for the plaintiffs . . . Are there any red flags to cause concern over collusion between a plaintiff and defendants?
12. The relative interests and abilities of competing plaintiffs . . .

2007 NCBC LEXIS 37 at *4.

{25} The court has considered each of these factors, though it believes some factors are more important than others for determination of the present Motion.

## B. Application of the Factors

1. *The present lawsuit is governed by Delaware law and involves issues of Delaware law for which there is no clear guiding case precedent.*

{26} The court considers the factors that Delaware law is to be applied and that Delaware has an interest in deciding unresolved issues of its laws to be particularly important.

{27} It is undisputed that the present litigation must be resolved by applying Delaware law, and that Defendants are subject to the jurisdiction of the Delaware courts. (Pl.'s Mem. of Law in Opp'n to Defs.' Mot. to Stay 8.); (Reply Mem. in Supp. of Defs.' Mot. to Stay 3.) Both Sealy and Tempur-Pedic are incorporated in Delaware, and the Merger Agreement expressly adopts Delaware law as controlling.

{28} The Parties dispute whether the present litigation implicates unresolved issues of Delaware law, and in particular whether a plaintiff's ability to enjoin a consensual merger which has already been approved by the shareholders based on the assertion that the process leading to up to the approval of the merger was tainted is a new issue, or rather one that requires only the application of settled precedent.

{29} Plaintiff alleges that the issue can be resolved by applying settled Delaware case law, including several cases establishing the right of shareholders to obtain an injunction of a merger based upon a tainted process. (Pl.'s Additional Mem. of Law in Opp'n to Defs.' Mot. to Stay Ordered by this Ct. at the Nov. 8, 2012 Hr'g 4 (citing *Mills Acquisition Co., v. MacMillan, Inc.*, 559 A.2d 1261 (Del. 1989); *Revlon, Inc. v. MacAndrews & Forbes Holdings, Inc.*, 506 A.2d 173 (De. 1986); *In re Del Monte Foods Co. S'holders Litig.*, 25 A.3d 813 (Del. Ch. 2011).)

{30} Defendants assert that the issue is unsettled under Delaware law, as there are no cases in Delaware which support the grant of an injunction to enjoin the closing of a consent merger, and note that neither *Revlon*, *Mills,* nor *Del Monte* involved a consent merger. (Defs.' Post-Hearing Mem. of Law in Further Supp. of Their Mot. to Stay 2.) Defendants further contend that the one case discussed by the Parties which did involve a consent merger, *Kahn v. Primedia*, held that a preliminary injunction was not the proper remedy. (Id. at 3.)

{31} Plaintiff contends that *Primedia* does not create a new issue of Delaware law, and is, in any event, distinguishable as it is a disclosure case rather than a process case. (Pl.'s Additional Mem. of Law in Opp'n to Defs.' Mot. to Stay 8.)

{32} The court finds no Delaware case that squarely addresses the precise question of whether a party can obtain a pre-closing injunction of a consent merger based upon a defective process claim. While this court is clearly capable of and regularly applies Delaware law, here, where there is no clear body of Delaware decisions to guide the resolution of the precise issue this case presents, and giving appropriate weight to the internal affairs doctrine, the court, in its discretion, concludes it is appropriate and best to stay the present case in favor of the Delaware Case. *See Cunniff v. Lewis*, 2009 NCBC LEXIS 35 at *9 (2009) ("although this Court is certainly capable of applying [Delaware] law, it would be a waste of this Court's resources to do so when the Delaware Court of Chancery is already overseeing litigation of materially identical claims.") Other factors discussed below anchor this decision.

2. *Delaware is at least as convenient a forum with equal or greater nexus to the controversy.*

{33} Sealy and Tempur-Pedic are both incorporated in Delaware, and the Merger is governed by Delaware law. Plaintiff Justewicz is a resident of neither Delaware nor North Carolina. *See Cunniff v. Lewis*, 2009 NCBC LEXIS 35 at *8 (discounting plaintiff's choice of forum argument against a motion to stay because "Plaintiff has no connection to North Carolina . . . and . . . Plaintiff is but one of many potential plaintiffs, all of whom could contend that the litigation should proceed in their home courts.") Only one of the members of the independent committee who approved the Proposed Transaction is located in North Carolina. (Mot. Hr'g Tr. 25, Nov. 8, 2012.)

{34} Plaintiff nevertheless contends that this court is the most convenient forum because the documents and witnesses are located in North Carolina. (Mot. Hr'g Tr. 44, Nov. 8, 2012.) However, it is also likely that many of the witnesses and documents are easily accessible to the Parties. Plaintiff's argument that Sealy is headquartered in North Carolina, and that the takeover of Sealy "will directly affect

the local economy" in North Carolina is not alone persuasive. (Pl.'s Mem. of Law in Opp'n to Defs.' Mot. to Stay 5.) While North Carolina does have an interest in the takeover of a business located in North Carolina, Delaware also has an interest in a corporation incorporated there and in the application of Delaware law. *See Cunniff v. Lewis*, 2009 NCBC LEXIS 35 at * 8–9.

3. *Defendants do not challenge Plaintiff's right to participate in the Delaware Case.*

{35}    Defendants have stated that they will not object to the participation of Plaintiff's counsel in the Delaware Case. (Reply Mem. in Supp. of Defs.' Mot. to Stay 7.) There is no demonstrable reason why the class of which Justewicz is a member will not be well-represented in the Delaware Case.

{36}    The court finds that the plaintiffs in the Delaware Case are pursuing the case on a similar theory as the Plaintiff here. Both cases challenge the Proposed Transaction as being unfair to the minority shareholders of Sealy, and claim that the process leading to the approval of the Proposed Transaction was flawed. Staying the present action will not cause Plaintiff to suffer substantial injury because an available claim is not being pursued.

{37}    Further, the court does not believe that there are evident inequalities in the ability of Plaintiff's counsel in the various cases adequate to deny a stay.

4. *Both cases are at a similar procedural stage, and the Delaware Case is poised to move forward on an expedited basis.*

{38}    All six of the cases challenging the Proposed Transaction were filed at approximately the same time. Thus, although the Delaware case was filed first, the court does not find this fact dispositive.

{39}    At the hearing on November 8th, Plaintiff asserted that the Delaware Case is not progressing at the expedited rate Plaintiff is seeking to employ in the present action. However, current evidence is to the contrary. On November 13th

the five Delaware Cases were consolidated into a single action, and a consolidated amended complaint has been filed.  On November 19th, a motion for expedited procedure and a motion for preliminary injunction were filed in the Delaware Case.  Discovery has also begun in the Delaware Case.

{40}    The Delaware Case is in a similar procedural position as the lawsuit presently pending in this court.  Consequently, staying the present action in favor of the Delaware Case will not cause a backslide of progress in the litigation against Sealy.

5. *Delaware's direct appeal procedure could be beneficial to resolve contested issues.*

{41}    The court has also considered the comparative speed at which the two cases can proceed.  Because this litigation potentially involves a novel question of Delaware law, Delaware's expedited appeal process could be useful.  *See In re Topps Co. S'holder Litig.*, 924 A.2d 951, 954 (Del. Ch. 2007) (noting that litigants in Delaware Chancery Court may seek direct review from the Delaware Supreme Court, providing "prompt definitive guidance" not available to courts in other states); *Levy Invests.*, 2007 NCBC LEXIS 37 at *6–7 n.1.

6. *Staying this action does not infringe upon constitutional principles.*

{42}    North Carolina courts have previously held that granting a motion to stay does not violate the North Carolina Constitution because it "does not deny litigants access to North Carolina courts, but merely *postpones* litigation here pending the resolution of the same matter in another sovereign court." *Home Indem. Co. v. Hoechst-Celanese Corp.*, 99 N.C. App. 322, 326, 393 S.E.2d 118, 121 (1990).  As Plaintiff seeks only injunctive relief, the stay also does not adversely affect Plaintiff's right to a jury trial.

7. *Where other factors do not strongly favor denying a stay, requiring Defendants to defend essentially the same lawsuit in two different states will work a substantial injustice on Defendants and unnecessarily raises the possibility of inconsistent decisions.*

{43}   The court need not decide whether the mere necessity of defending multiple actions in more than one state is "per se" substantial injustice.  On the facts of this case, including the other important factors discussed above, the court concludes that Defendants will suffer a substantial injustice in having to defend substantially the same lawsuit challenging the same transaction in two different jurisdictions.  That injustice would be potentially amplified if, through inconsistent conclusions, one state denies a preliminary injunction while the other grants it. (Mem. in Supp. of Defs.' Mot. to Stay 11.)

## VI.  CONCLUSION

{44}   For the foregoing reasons, and in the exercise of the court's discretion, Defendants' Motion to Stay is GRANTED.


IT IS SO ORDERED this the 27th day of November, 2012.