Paramount Rx, Inc. v. Duggan, 2015 NCBC 30.

STATE OF NORTH CAROLINA

COUNTY OF WAKE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
14 CVS 13216

PARAMOUNT RX, INC.,

          Plaintiff,

    v.

ROBERT E. DUGGAN and
AGELITY, INC.,

          Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

ORDER

{1}     THIS MATTER is before the Court on Plaintiff's Motion for Limited Expedited Discovery ("Plaintiff's Motion") and Defendants' Motion to Dismiss, or in the Alternative, to Stay ("Defendants' Motion"). For the reasons expressed below, Plaintiff's Motion is DENIED, Defendants' Motion is GRANTED IN PART and DEFERRED IN PART, as a result of which this action is STAYED.

*Womble Carlyle Sandridge & Rice, LLP by Christopher W. Jones and Marina C. Carreker for Plaintiff Paramount Rx, Inc.*

*Ellis & Winters LLP by Leslie C. Packer and James M. Weiss for Defendants Robert E. Duggan and Agelity, Inc.*

Gale, Chief Judge.

## I.    THE PARTIES

{2}     Plaintiff Paramount Rx, Inc. ("Plaintiff" or "Paramount") is a Delaware pharmacy benefits management corporation with its principal place of business in Cary, North Carolina. (Am. Compl. ¶ 5.) Nonparty Philip Escaldi ("Escaldi") is Paramount's President. (Am. Compl. ¶ 6.) Nonparty Michael Sallusto ("Sallusto") is Paramount's Executive Vice President. (Am. Compl. ¶ 28.)

{3}     Defendant Agelity, Inc. ("Agelity") is a Delaware pharmacy benefits corporation that competes with Paramount and has its principal place of business in

Melville, New York. (Am. Compl. ¶ 7.) Escaldi and Sallusto were formerly associated with Agelity.

{4} Defendant Robert E. Duggan ("Duggan") is Agelity's President and resides in New York. (Am. Compl. ¶ 9.)

## II. PROCEDURAL HISTORY

{5} Paramount initiated this action by filing its Complaint on October 1, 2014, accompanied by a Motion for Preliminary Injunction and Temporary Restraining Order and a Notice of Designation, pursuant to which the case was designated as a complex business case. The case was assigned to the undersigned on October 2, 2014.

{6} Plaintiff seeks monetary and injunctive relief. The gravamen of Plaintiff's Complaint is that Agelity and Duggan, in his capacity as Agelity's President, have made and may continue to make defamatory statements to customers in the marketplace within which Paramount and Agelity compete. Paramount alleges that it was unaware of Defendants' wrongful statements until it learned of them during a May 2014 deposition of Charles Myrick ("Myrick"), the President of American Consultants, Rx. ("American Consultants"), taken in New York litigation. Myrick testified that the statements began as early as late 2009, continued thereafter, and were factors that prevented American Consultants from entering into a business relationship with Paramount. (Am. Compl. ¶¶ 37–41.)

{7} Prior to considering Plaintiff's request for preliminary injunctive relief, the Court raised an initial inquiry whether any injunctive relief would be barred by the doctrine of prior restraint, grounded in the First Amendment of the United States Constitution. The parties filed memoranda addressing this threshold issue on October 21, 2014, discussing the principle that the prior restraint doctrine may apply less stringently to commercial speech, provided that the party seeking an injunction can demonstrate a pattern of defamatory commercial speech. After reviewing the briefs and authorities cited, the Court elected not to deny any

possibility of a preliminary injunction, but expressed doubt that Plaintiff could satisfy the necessary evidentiary requirement of a pattern.

{8}     In response, Plaintiff filed a verified Amended Complaint on October 24, 2014, alleging additional statements beyond those made to Myrick, and followed on October 30, 2014, with its Motion for Limited Expedited Discovery, seeking limited discovery to further develop a record upon which to seek injunctive relief. Later, on December 4, 2014, Plaintiff sought to expedite discovery regarding Duggan's challenge to personal jurisdiction.

{9}     Defendants filed their Motion on November 26, 2014.  In addition to moving to dismiss all claims, Defendants alternatively urge the Court to stay this proceeding pursuant to subsection 1-75.12(a) of the North Carolina General Statutes in deference to two lawsuits that have been pending in New York (the "New York Actions").

{10}    The Court held a status conference on December 5, 2014, in part to further inquire into the nature and status of the New York Actions, after which the Court accepted supplemental filings related to Defendants' motion to stay.  The Court reserved any briefing or consideration of Defendants' motion to dismiss.

{11}    The Court heard argument regarding the motion to stay on January 15, 2015.  At the hearing, the Court requested that Plaintiff further specify the limited discovery topics it wished to pursue on an expedited basis, including topics that would be addressed in a deposition of Defendant Duggan.  Plaintiff complied by submitting its January 20, 2015, letter.

{12}    The Motions are then ripe and ready for ruling, except to the extent that Defendants' Motion seeks dismissal, as the Court has continued to defer any briefing or consideration of that aspect of Defendants' Motion.

## III.    THE PENDING ACTIONS

{13}    Paramount's primary complaint in this action is that Agility and Duggan have made and may continue to make false, misleading, and malicious statements regarding Escaldi and Sallusto in order to cause companies to refrain

from doing business with Paramount. Paramount is the sole plaintiff in this action. It seeks damages for past statements and an injunction against future statements. In part, Paramount complains of statements made to Myrick for the purposes of causing American Consultants to fail to do business with Paramount.

{14} There are two prior pending New York cases. The first of the New York Actions was filed on November 30, 2011, and brought by Agelity and Duggan against Escaldi, but not Paramount. *Agelity, Inc. v. Escaldi*, No.: 11-3654 (N.Y. filed Nov. 30, 2011) (the "*Escaldi* Action") (Defs.' Mem. Supp. Mot. Stay or in Alternative Dismiss ("Defs.' Mem. Supp.") Ex. A.) The *Escaldi* Action complaint is grounded on a Settlement Agreement between Agelity and Escaldi entered after Escaldi's employment with Agelity ended, resolving claims and selling Escaldi's interest in Agelity. (Defs.' Mem. Supp. Ex. A ¶¶ 12–24.) Agelity and Duggan seek damage for Escaldi's breach of the Settlement Agreement, and particularly its nondisparagement clause (Defs.' Mem. Supp. Ex. A ¶ 20) and the agreement not to divulge confidential information. (Defs.' Mem. Supp. Ex. A ¶ 22.) Escaldi counterclaimed for breach of the nondisparagement provision of the Settlement Agreement, complaining of Duggan's defamatory statements to Myrick and Paramount's loss of American Consultants as a potential customer. (*See* Defs.' Mem. Supp. Ex. B.) Although Paramount is not a party in the *Escaldi* Action, Escaldi seeks to recover damages because Paramount lost American Consultants as a customer. (Defs.' Mem. Supp. Ex. B, Am. Countercl. ¶¶ 34–41.)

{15} Agelity filed its second New York action on April 30, 2012, styled *Agelity, Inc. v. Sallusto*, No.: 12-13366 (N.Y. filed Apr. 30, 2012) (the "*Sallusto* Action").[1] (Defs.' Mem. Supp. Ex. C.) In that action, both Paramount and Escaldi are defendants. Agelity complains that Paramount was formed through Escaldi's breaches of duties and through trade secret misappropriation, and that thereafter Paramount unfairly competed and wrongfully solicited Agelity's customers. Defendants did not assert any counterclaims. (*See* Defs.' Mem. Supp. Ex. D.)

---

[1] The full list of defendants consists of Michael Sallusto, Philip Escaldi, Kenneth Hammond, Jeremy Starrin, and Paramount Rx., Inc.

{16}    Paramount concedes that the North Carolina action and the counterclaim in the *Escaldi* Action involve allegations that Duggan made statements to Myrick causing Paramount's loss of American Consultants as a customer.  Paramount asserts, however, that the overlap between the actions does not extend beyond this, and that the North Carolina action will further extend to statements and factual matters not involved in the New York Actions.  (Pl.'s Opp'n Defs.' Mot. Stay 5–6.)

{17}    Defendants respond that the overlap between the cases is not so narrow and that all statements made by the various parties in the competitive marketplace as to the circumstances surrounding Paramount's formation and operation, and their truth or falsity, are at the core of the New York Actions. Defendants assert that Paramount could have pursued and might still pursue its claims in New York, and that Paramount's insistence on a North Carolina forum is compromised by the fact that Escaldi asserted a damages claim in New York arising out of the same conduct Paramount complains of in the North Carolina action, and for the loss of the same customer.

{18}    Some of the additional statements Plaintiff contends are involved in only the North Carolina action are those made to James D. Robbins ("Robbins"). The North Carolina Amended Complaint alleges as to those statements: "Following Escaldi and Sallusto's departure from Agelity, Duggan told Robbins that Escaldi and Sallusto were liars and thieves, that they had stolen proprietary information from Agelity, and that during the time they were employed by Agelity, Escaldi and Sallusto operated Paramount to compete with Agelity."  (Am. Compl. ¶ 31.) Defendants respond that any statements to Robbins are necessarily relevant to the New York Actions, whether or not they are specifically referred to in the pleadings, because Agelity's central claim is that Escaldi and Sallusto engaged in this improper conduct when forming and operating Paramount.  Agelity's allegation in the *Sallusto* Action is stated as: "The Individual Defendants wrongfully misappropriated the Proprietary Information and converted it to their own use in their competing venture, Paramount."  (Defs.' Mem. Supp. Ex. C ¶ 86.)

## IV.   ANALYSIS

{19}   "If, in any action pending in any court of this State, the judge shall find that it would work substantial injustice for the action to be tried in a court of this State, the judge on motion of any party may enter an order to stay further proceedings in the action in this State." N.C. Gen. Stat. § 1-75.12(a) (2014). The Court should make its determination based on the exercise of its sound discretion. *Home Indem. Co. v. Hoechst Celanese Corp.*, 99 N.C. App. 322, 325, 393 S.E.2d 118, 120 (1990); *La Mack v. Obeid,* 2015 NCBC LEXIS 24, at *15 (N.C. Super. Ct. Mar. 5, 2015).

{20}   The factors that may be considered in the exercise of that discretion include:

> (1) the nature of the case, (2) the convenience of the witnesses, (3) the availability of compulsory process to produce witnesses, (4) the relative ease of access to sources of proof, (5) the applicable law, (6) the burden of litigating matters not of local concern, (7) the desirability of litigating matters of local concern in local courts, (8) convenience and access to another forum, (9) choice of forum by plaintiff, and (10) all other practical considerations.

*Lawyers Mut. Liab. Ins. Co. v. Nexsen Pruet Jacobs & Pollard*, 112 N.C. App. 353, 356, 435 S.E.2d 571, 573 (1993).

{21}   This Court may, but is not required to, look at each of the *Lawyers Mutual* factors in weighing its decision, and has discretion whether to consider any other pertinent factors as it seeks to implement the purposes of section 1-75.12. *Id.* at 357, 435 S.E.2d at 573–74 (citing *Motor Inn Mgmt., Inc. v. Irvin-Fuller Dev. Co.,* 46 N.C. App. 707, 713, 266 S.E.2d 368, 371 (1980)). The ultimate question is whether the particular factors of this particular case lead to the reasoned conclusion that there exists a reasonable, convenient, and fair forum, resort to which would avoid a substantial injustice that would otherwise occur. *Wachovia Bank N.A. v. Harbinger Capital Partners Master Fund I, Ltd.*, 201 N.C. App. 507, 520, 687 S.E.2d 487, 495 (2009).

{22}    The Court addresses the *Lawyers Mutual* factors below in reverse order, and makes only passing reference to some of the factors, as they are not dispositive on the particular facts of this case.

{23}    Regarding any concern for practical considerations, the Court has considered factors such as relative access to and timing of discovery, as well as the potential impact of Duggan's challenge to personal jurisdiction in North Carolina. Although the New York Actions have been pending for a significant amount of time, discovery apparently has not substantially advanced. At the same time, Paramount alleges that Myrick's deposition in the New York Actions provided the factual foundation for and was the genesis of the North Carolina action. Paramount argues that it should be allowed to pursue the North Carolina action and target expedited discovery to the narrow set of contentions necessary to try only those issues presented in this action, and that it should not be required to depend on discovery in the broader set of claims pending in New York. Defendants seek to minimize Paramount's timing argument, urging that discovery in New York is imminent. Defendants also assert that discovery in the North Carolina action will not be significantly narrower, because the cases share the common need to develop a record regarding the overall nature of Escaldi and Sallusto's departure from and subsequent competition with Agility, and that determination of the truth or falsity of the statements of which Paramount complains must derive from that common set of facts. The Court concludes that practical considerations can be argued in favor of either party's position as to a stay and do not dominate the factors that should determine the Court's exercise of its discretion.

{24}    Regarding the weight to be given to Plaintiff's choice of forum, the Court acknowledges that this choice is usually entitled to great deference, and that the movant who seeks to stay the action in the plaintiff's chosen forum faces a significant burden. *See, e.g.*, *Firstar Bank, N.A. v. Interlease 757 Aircraft Investors, LLC*, No. 1:01CV706, 2002 U.S. Dist. LEXIS 20974, at *10 (M.D.N.C. Aug. 23, 2002); *La Mack*, 2015 NCBC LEXIS 24, at *16–17. However, that consideration in this particular case is tempered by various facts, most importantly

that Escaldi placed the truth of Agelity and Duggan's statements in issue, at least as to Myrick, in his New York counterclaim, and has sought to recover damages for Paramount's loss of Myrick's company as a customer. Considering this background, the Court finds that it should not give substantial importance to either Paramount's choice of forum on the one hand or on the other hand any argument that Agelity may make that the Court should defer to the New York Actions under the "first-filed" rule. *See, e.g.*, *Nutrition & Fitness, Inc. v. Blue Stuff, Inc.*, 264 F. Supp. 2d 357, 360–62 (W.D.N.C. 2003) (discussing the parameters of the first-filed rule).

{25} The Court does not perceive any significant matters of local concern favoring either the North Carolina or New York forum.

{26} The Court likewise does not consider the need to apply foreign law to be a significant factor. While ultimately either the New York or North Carolina courts must conduct a conflicts-of-law analysis to resolve pending claims, there is neither an apparent manifest difference between the law of the respective states on the underlying claims, nor an apparent potential for difficulty of either forum's application of foreign law.

{27} The Court perceives the relative ease of access to discovery and the availability of compulsory process as neutral factors. Each side has made an equally supported argument based on discovery considerations. The Court does not believe that the relative speed at which discovery in the various actions has proceeded or might proceed should be a controlling or dominant factor in the stay analysis. Notably, neither Paramount nor Sallusto has challenged personal jurisdiction in New York. While the Court does not at this time express any opinion on the merits of the motion, Duggan has moved to dismiss the North Carolina action for lack of personal jurisdiction.

{28} The Court likewise sees no significant issue regarding the comparative convenience of the witnesses.

{29} The most critical determination is how the two actions compare. In this regard, the Court concludes that the cases overlap more than Paramount's arguments indicate, and that the necessary factual records for the two cases are

more common that its opposition to a stay recognizes. Paramount places the strongest emphasis on its point that its claims and the relief sought in the North Carolina action are different from the New York Actions. At the same time, Paramount does not fully account for the fact that the necessary proof for the relief it seeks in North Carolina must extend into the areas at the heart of the New York litigation. Ultimately, the various claims necessitate that a court resolve whether Agelity or Duggan's statements are true. Even though Paramount chose not to make an affirmative damages counterclaim in the *Sallusto* Action, Paramount's interest is aligned with Escaldi's and Paramount is motivated and positioned to defend on the basis that statements made about it and its officers or employees are false.

{30} In sum, considering the above factors separately and collectively, the Court concludes that Defendants would suffer substantial injustice if required to proceed with the separate actions in New York and the action in North Carolina, and that New York provides an adequate forum to redress Paramount's claims. The Court should exercise its discretion under section 1-75.12 to stay the North Carolina action.

{31} In contrast, the court concludes that Paramount will not suffer substantial injustice if this action is stayed. The only argument of prejudice to Paramount is that it may suffer irreparable harm if it is not allowed immediate access to discovery in North Carolina when discovery in the New York Actions has been delayed. Obviously, relevant discovery is available in New York, and, significantly, Paramount expressly alleges that discovery in New York allowed it to file this action in North Carolina. While discovery may have been slow to develop in the New York Actions, the Court does not find this adequate to overcome the substantial injustice of requiring Agelity and Duggan to proceed simultaneously on different fronts. Further, as to any claim of prejudice Paramount might make, the Court again notes that in order to address any preliminary injunctive relief, the Court's inquiry would have to extend to the question of the truth or falsity of the alleged defamatory statements. That issue is at the heart of the discovery that will

proceed in the New York actions.  Should a developed record suggest that injunctive relief may be appropriate, for some reason other than that relief is not available from the New York courts, this Court can reconsider its stay.

## V.    CONCLUSION

{32}    Accordingly, for the reasons stated, and concluding that Defendants will suffer substantial injustice if the present case is allowed to go forward where there is an adequate forum as a result of prior pending litigation in New York, in the exercise of the Court's discretion, Defendants' Motion to Dismiss, or in the Alternative, to Stay is GRANTED, to the extent it seeks to stay this action. Plaintiff's Motion for Expedited Discovery is, therefore, DENIED.  Further briefing or consideration of Defendants' Motion to Dismiss is DEFERRED.


IT IS SO ORDERED this 27th day of March, 2015.